**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | **Nos. 00-CR-0046-04** |
| | & 04-CV- |
| JOSEPH CORDO, : | (Judge Caldwell) |
| Defendant. : | **FILED ELECTRONICALLY** |

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255

Joseph M. Cordo has filed a motion under 28 U.S.C. § 2255 challenging his sentence. On January 12, 2005, the Supreme Court decided United States v. Booker, 543 U.S. --, 125 S.Ct. 738. In light of that decision, the § 2255 motion should be granted.

Mr. Cordo's conviction became final on November 17, 2003, when certiorari was denied following his direct appeal. Cordo v. United States, 540 U.S. 1018, 124 S.Ct. 588, 157 L.Ed.2d 433 (No. 03-584). The "new rule" his motion invokes (see Teague v. Lane, 489 U.S. 288 (1989)) was announced not in Blakely v. Washington, 542 U.S. --, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), or Booker but in Ring v. Arizona, 536 U.S. 584 (2002), prior to the date his conviction became final. Ring was arguably an extension of Apprendi v. New Jersey, 530 U.S. 446 (2000); Blakely and Booker, on the other hand, were but inexorable applications of Ring. For the reasons elaborated in this memorandum, that rule is retroactively cognizable on collateral attack in his case.

I. PROCEDURAL HISTORY

Movant Joseph Cordo was convicted in this Court in 2001, and sentenced on remand from the Third Circuit on July 10, 2003. Because the Court of Appeals did not stay its mandate, the resentencing occurred during the pendency of Mr. Cordo's direct appeal, that is, prior to the denial by the Supreme Court of the United States of his petition for a writ of certiorari.

A 58-count indictment was filed on February 16, 2000, charging fraud, conspiracy, and money laundering offenses, plus a criminal forfeiture, against R. Steven Stackpole, Jeffrey Klepper, Scott Stackpole, and Joseph Cordo. A jury trial lasted eleven days in September 2000. The jury convicted Mr. Cordo of conspiracy to commit mail fraud (18 U.S.C. § 1341), in violation of 18 U.S.C. § 371 (Count 12); money laundering conspiracy, 18 U.S.C. § 1956(h) (Count 13); and 13 substantive counts of money laundering, 18 U.S.C. § 1956(a)(1)(B)(i) (Counts 26-38). After return of the principal verdicts, Mr. Cordo pleaded guilty conditionally to the forfeiture count. On May 18, 2001, this Court sentenced Mr. Cordo to serve 96 months' imprisonment, to be followed by three years' supervised release.[1] On appeal, the Third Circuit reversed the sentence, based on a "grouping" error under the U.S. Sentencing Guidelines. United States v. Cordo, 324 F.3d 223 (3d Cir. 2003).[2] On remand, on July 10, 2003, this Court corrected the "grouping" error and resentenced Mr. Cordo to serve a term of 78 months,

_____

[1] The Court also sentenced him to pay a total of $1,217,699.00 in restitution (joint and several liability), with various amounts payable to a list of 27 individuals. Mr. Cordo was further ordered to pay special assessments of $1500 and to forfeit his interest in certain property. The Court did not impose a fine.

[2] The court affirmed Mr. Cordo's convictions, however, for reasons given in a non-precedential opinion filed the previous day in his co-appellants' case. See id. n.3, adopting United States v. Stackpole, 64 Fed.Appx. 842, 2003 WL 1785929.

with all other aspects of the sentence to remain the same. Mr. Cordo did not appeal that judgment, which was entered on the docket July 16, 2003.

Meanwhile, following the Circuit's denial of rehearing, Mr. Cordo filed a timely petition for certiorari in the Supreme Court, pursuing a mail fraud issue. On November 17, 2003, certiorari was denied. 124 S.Ct. 588, 157 L.Ed.2d 433 (No. 03-584).

Mr. Cordo is presently confined at a minimum security federal prison. At this filing, he has served more than 42 months. Unless earlier reduced, his term of imprisonment will expire, less good conduct time as calculated by the Bureau of Prisons, on February 14, 2007.

## STATEMENT OF FACTS

Defendant Cordo was convicted after trial of participating in an investment fraud. The grand jury did not allege, and the petit jury was not asked at trial to find and did not find (whether beyond a reasonable doubt or otherwise) the amount of "loss" caused by the conspiracy or the "value of funds" involved in money laundering. Nor did the grand jury allege or the petit jury decide his role in the offense or whether he abused a position of private trust. In pleading guilty conditionally to Count 58, Mr. Cordo did not stipulate that he had a property interest, nor what that interest (if any) was, in the property identified therein as subject to forfeiture, nor did he stipulate to any facts that would show how the property was "involved in" the offenses charged in Counts 13 and/or 26-38, or was "traceable to" such property.[3] At sentencing most of these facts were contested. The Court based its sentence on the U.S. Sentencing Guidelines.

---

[3] None of the other matters alleged in Count 58 was a basis for entering a forfeiture under 18 U.S.C. § 982 on account of any offense for which Mr. Cordo was convicted.

-3-

Defense counsel lodged no objection to this process, under which the maximum sentence the defendant faced was increased on the basis of findings of fact not made by the jury nor by any factfinder beyond a reasonable doubt. The Court chose a sentence at the midpoint of the guideline range, but did not consider any sentence below the range as coming within the scope of its allowable discretion.

## ARGUMENT

Defendant Joseph Cordo in entitled to vacatur of his sentence under 28 U.S.C. § 2255 and to a resentencing, because his sentence was imposed in violation of the Constitution and laws of the United States and is otherwise subject to collateral attack.

> A.  Movant Was Sentenced in Violation of the Constitution
> and Laws of the United States.

This Court applied the Sentencing Guidelines to Joseph Cordo's sentencing, treating them as binding, both as to the top and the bottom of the applicable range, pursuant to 18 U.S.C. § 3553(b). This approach appered to be correct at the time under settled case law. See United States v. Frank, 864 F.2d 992 (3d Cir. 1988).[4] Under the Sentencing Reform Act as it was interpreted and applied before the Supreme Court's decision in United States v. Booker, 543 U.S. --, 125 S.Ct. 738 (Jan. 12, 2005), sentencing within the range set by the Guidelines was mandatory, absent a judicial finding of grounds for departure, as narrowly limited under § 3553(b). Applying the law as discussed in Booker to

---

[4] See also, e.g., United States v. DeRiggi, 45 F.3d 713 (2d Cir. 1995) (rejecting construction of Sentencing Reform Act which prevailed in Booker); United States v. Davern, 937 F.2d 1041 (6th Cir. 1991) (en banc) (same).

the sentencing of Mr. Cordo, it follows that the motion for § 2255 relief should be granted.

In Booker, the Court (in the part of the opinion authored by Justice Breyer) severed and excised the mandatory guidelines provisions from the SRA, leaving intact the rest of that Act as well as all of the guidelines and policy statements. The Court held that applying severability analysis to strike two statutory sections from the Act (18 U.S.C. § 3742(e) as well as § 3553(b)) was necessary to adhere to its other holding (expressed for the Court in the majority opinion by Justice Stevens) that mandating sentencing according to the Guidelines violated a defendant's Sixth Amendment right to jury trial, as interpreted in cases from Apprendi v. New Jersey, 530 U.S. 466 (2000), through Blakely v. Washington, 542 U.S. --, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

The remainder of Act is constitutional, the Court held. Thus, sentencing judges must still consider the guidelines, see 18 U.S.C. § 3553(a)(4), but they are no more controlling of the final sentencing decision than any of the many other factors the court must consider under § 3553(a) as a whole. What remains mandatory under that statute is that the actual sentence imposed must be "sufficient, but not greater than necessary" to fulfill the purposes of sentencing listed under id.(a)(2). Booker, 125 S.Ct. at 757, 764-65, 765-66, 768. Those purposes are promotion of respect for law, including the provision of just punishment in light of the seriousness of the offense; deterrence, both general and specific; incapacitation to protect the public; and any needed rehabilitation and treatment of the offender. See generally United States v. Crosby, 2005 WL 240916 (2d Cir., filed Feb. 2, 2005), at *2-*10 (elaborating rationale and impact of Booker); United States v. Hughes, 2005 WL 147059, at *2-*4 (4th Cir., Jan. 24, 2005).

Since the maximum sentence under the guidelines that Mr. Cordo faced was increased by this Court, and that range was then treated as mandatory, on the

basis of critical findings of fact beyond those determined by the jury, there was constitutional error in the sentencing. Moreover, that error prejudiced Mr. Cordo, because the record establishes quite clearly the requisite "substantial influence" on the sentencing decision from the fact that the Court viewed as mandatory the higher guidelines range. See O'Neal v. McAninch, 513 U.S. 432 (1995), explaining Brecht v. Abrahamson, 507 U.S. 619 (1993) (standard for harmlessness on collateral review). Similarly, the selection of sentence was "substantially influenced" by the failure of the Court and counsel to appreciate the existence of broader discretion to sentence below the guidelines, after considering the "history and characteristics of the offender," 18 U.S.C. § 3553(a)(1), and without the requirement of justifying specific grounds for "departure."

     To put the matter another way, this Court imposed sentence in this case by selecting from a range which it was under the misapprehension was mandatory, when under the law, correctly understood, it was not. The Third Circuit has long recognized that "sentencing on the basis of materially untrue assumptions violates due process." United States v. Katzin, 824 F.2d 234, 240 (3d Cir. 1987) (Becker, J.). Accord, United States v. Levy (Gozlon-Peretz), 865 F.2d 551, 559-60 (3d Cir. 1989) (in banc) (misapprehension of law concerning impact of sentence imposed); see also United States v. Tabares, 86 F.3d 326 (3d Cir. 1996) (sentence imposed in part on basis of incorrect belief concerning defendant's prior record); United States v. Furst, 918 F.2d 400 (3d Cir. 1990) (incorrect guidelines assessment may constitute material misinformation such that reliance on it, even merely for reference in "old law" case, violates due process).

     It is far from clear that the 78-month (6½-year) prison term imposed on Mr. Cordo was "not longer than necessary" to accomplish the objectives of sentencing in this case. Indeed, if this Court, in its discretion, might have thought a 48-month sentence "sufficient," 18 U.S.C. § 3553(a), then Mr. Cordo would be going

home now.5  And of course the real possibility of any sentence between 48 and 78 months proves actual prejudice to him.  For these reasons, the sentence in this case was imposed in violation of law, and should be vacated for resentencing.

      B.  The *Teague* Doctrine Does Not Bar Mr. Cordo's Claim.

Although he raises this issue in a § 2255 petition rather than on direct appeal, Mr. Cordo is entitled to the benefit of Booker's subsequently-announced application of Apprendi.  Mr. Cordo's case was pending on direct appeal until November 17, 2003.  He is therefore entitled to invoke, without trouble under Teague v. Lane, 489 U.S. 288 (1989),6 any "new rule" of constitutional criminal procedure which was declared prior to that date.

Movant does not concede that Teague applies fully to § 2255 motions, which the Supreme Court has never held.  Instead, the Court continues to emphasize how "the Teague principle protects not only the reasonable judgments of *state courts* but also *the States' interest* in finality quite apart from their courts." Beard v. Banks, 542 U.S. --, 124 S.Ct. 2504, 159 L.Ed.2d 494, 503 (June 24, 2004) (emphasis added).  Comity plays no role in § 2255 jurisprudence.  Rather, Mr. Cordo merely shows here that even on the adverse assumption that Teague constrains his effort to obtain a lawful sentence under federal law, the rule he seeks to invoke is available to him.

_____

5 Less good conduct time, a four-year sentence would expire this month.

6 The doctrine of Teague v. Lane, 489 U.S. at 310-12, is that new, judge-made rules of constitutional criminal procedure are not applicable to cases that became final before the rule is announced, unless the rule decriminalizes the charged conduct or prohibits the imposition of certain types of punishment for a class of defendants, or constitutes a "watershed rule of criminal procedure."  United States v. Swinton, 333 F.3d 481, 487 (3d Cir. 2003).

*1. The Movant Does Not Invoke any "New" Rule*

Mr. Cordo's appeal was pending when Ring was decided, but became final before Blakely. If the "rule" Mr. Cordo relies on was "newly announced" in either Apprendi or Ring, it applies to his case without any Teague inquiry at all; if the "rule" was "new" in Blakely or Booker, then a Teague analysis is required.[7]

Further, even if a Teague inquiry were conducted, the burden of proof holdings of Booker, Blakely and Apprendi are watershed rulings and hence exempt from the Teague rule for that additional reason.

The correct starting point for this analysis is to recognize that Apprendi is the key, new case, upon which Mr. Cordo's argument depends. The Court of Appeals has decided that Apprendi announced a "new rule" in the Teague sense. United States v. Swinton, 333 F.3d 481, 485 (3d Cir. 2003). By the time the concept of "statutory maximum" as used in Apprendi was clarified in Ring -- as if it had not been clear from Apprendi itself -- to include tiered sentencing levels for the same offense, depending upon proof of additional, aggravating facts, Guideline sentencing under the mandatory rule of § 3553(b) as formerly interpreted in Frank and like cases was doomed.[8] The *constitutional* rule applied in

---

[7] This Court appears to have overlooked the critical step of examining which decision was essential to the movant's claim, when it summarily decided Mr. Cordo's co-defendant's § 2255 case, United States v. Stackpole, No. 1:CR-00-46-01 (Jan. 19, 2005), at 9, on the basis of its prior decision in United States v. Shade, No. 1:CR-02-144-02 (Sept. 7, 2004). Since the convictions of both defendants in those cases -- like Mr. Cordo's -- had become final *after* the decisions in Apprendi and Ring, those decisions were necessarily retroactively applicable to them, as to him. The question to be decided in those cases (as here) was whether Blakely (of which Booker was merely an obvious application) itself announced *another* "new rule" or merely extended those cases inevitably. This Court does not appear to have addressed that critical question in those cases.

[8] Since the movant's conviction at issue in Swinton had become final prior to the announcement of the decision in Apprendi, the Court of Appeals had no occasion

-8-

Booker, which was presaged six months earlier by Blakely, is not itself "new" in the Teague sense. Rather, Booker (like Blakely) was but an application of the new rule announced in Apprendi v. New Jersey as explicated in Ring.

Of course, Teague also bars collateral retroactivity if the result was not "dictated by precedent existing at the time the defendant's conviction became final"; this can include "novel applications of old rules." United States v. Swinton, 333 F.3d 481, 489 (3d Cir. 2003). See also Beard v. Banks, 124 S.Ct. at 2511-13. Thus, The Blakely decision itself begins by stating:

> This case requires us to *apply* the rule we expressed in Apprendi v. New Jersey, 530 U.S. 466, 490 (2000): 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'

Blakely, 124 S.Ct. at 2536 (emphasis added). Similarly, the Booker decision begins, "We hold that both courts [below] correctly concluded that the Sixth Amendment *as construed in Blakely* does apply to the Sentencing Guidelines." 125 S.Ct. at 746 (emphasis added). Justice Breyer's four-justice dissent from the constitutional holding of Booker acknowledges that "Blakely purports to follow, not to extend, Apprendi." 125 U.S. at 806. In both Blakely and Booker, in other words, the Court itself recognized that it was taking the *rule* previously developed in June of 2000 in Apprendi, as clarified in June 2002 in Ring, and not changing

_____(continued)

to consider there the retroactivity of Ring itself (that is, as applied to a conviction which became final after June 2000 but before June 2002). In United States v. Phillips, 349 F.3d 138 (3d Cir. 2003), the Court held that neither Ring nor Apprendi applied to guideline determinations made by the judge within the outer bounds of the statutory maximum set by the jury's verdict. This reaffirmed the decision in United States v. Williams, 235 F.3d 858 (3d Cir. 2000), that Apprendi protection does not extend to facts which increase a guideline range. Both of those decisions, of course, were overruled by Booker.

-9-

it but simply "apply[ing]" it, directly and without expansion or extension, to a new factual situation under other statutory schemes.

The Seventh Circuit has rushed to conclude that the rule announced in Booker is itself a new one, declaring that neither the Booker nor the Blakely decision was dictated by Apprendi (and that no watershed rule was announced in any of them). See McReynolds v. United States, 2005 WL 237642 (7th Cir., Feb. 2, 2005). With all due respect to Judge Easterbrook, that decision cannot have resulted from competent briefing (it appears to have been litigated pro se and was submitted without argument) and does not grapple with the Teague issue in any serious way. More important, the question under Teague is not whether the Blakely decision set forth a new rule for federal sentencing, but whether the *constitutional holding* of the Booker decision was a direct application of Apprendi and Ring, with at most an unexpected practical result: the invalidation of the section of the Sentencing Reform Act which made the guidelines mandatory. The real question, is whether Blakely qualifies under Teague as a "new rule," since Booker, in light of Blakely, was not "new." See United States v. Fisher, 2005 WL 271541, *2 n.1 (3d Cir., Feb. 2, 2005) (non-precedential) (decision that Apprendi applies to the Guidelines, when the latter are treated as mandatory, was "generally (if not universally) expected" based on decision in Blakely). Booker applied the rule set forth in Apprendi and Ring to the Sentencing Reform Act, as that rule had been applied six months earlier to the Washington State guidelines in Blakely, albeit through a controversial application of principles of statutory construction and federal severance doctrine. Nor did the Blakely case announce a new rule of constitutional law.

As Justice Scalia wrote for the majority in Blakely: "Our precedents *make clear*, however, that the 'statutory maximum' for Apprendi purposes is the maximum sentence that a judge may impose *solely on the basis of the facts*

*reflected in the jury verdict or admitted by the defendant*." Blakely, 124 S.Ct. at 2537 (emphasis added).  Blakely, in other words, was at least dictated by Ring, if not by Apprendi itself.  See United States v. Hartman, 117 Fed. Appx. 829, **2 n.2 (3d Cir. 2004) (non-precedential) ("Blakely simply applied the rule expressed in Apprendi").9

 The Blakely decision also notes that Ring did not establish a new rule post-dating Apprendi, but instead was itself a straightforward application of Apprendi: "In Ring v. Arizona, 536 U.S. 584, 592-593, and n.1 (2002), we applied Apprendi to an Arizona law ...." 124 S.Ct. at 2537.  Thus, Blakely again recognized that the seminal new-rule case was Apprendi, and that both Ring and Blakely were mere applications of that June 2000 rule.  Ring made clear that what mattered under Apprendi was not the form of the "finding," but the real effect of a given finding on the defendant's sentence.  536 U.S. at 604.  Ring showed that on a two-tiered maximum penalty array for one offense, the lower tier was itself a "statutory maximum," as under the guidelines.  Id.  What was left undecided, at most, was whether the "maximum" each guideline range established was "statutory" in nature.  But to answer that question did not require any "new rule" of constitutional law; it merely required an honest reading of the SRA, and in particular the impact of sections 3553(b) and 3742(e).  But even if Ring announced a "new rule" by *extending* Apprendi, Mr. Cordo is entitled to its benefit, as his conviction became final more than a year *after* Ring was decided.

 The Blakely and Booker dissenters do not seriously claim that the rule of Apprendi, as applied in Ring, does not inexorably lead to those later decisions.  The dissenters, in reality, simply continue to disagree with the majority decision

---

9 Needless to say, it is unsurprising that a prisoner whose conviction became final prior to Apprendi cannot surmount a Teague bar under Blakely (or Booker), either.  See Burrell v. United States, 384 F.3d 22, 26 n.5 (2d Cir. 2004).

-11-

in Apprendi itself.  See Blakely, 124 S.Ct. at 2550 (Breyer, J., dissenting) ("The Court makes clear that it means what it said in Apprendi v. New Jersey, ...."). Similarly, Justice O'Connor recognized, citing Teague's "dictated by precedent" test, that the Blakely decision would be applied to all those whose cases were still pending on direct appeal at the time of Apprendi -- not just those with appeals pending at the time of Blakely.  124 S.Ct. at 2549 (dissent).  The elaboration of federal sentencing requirements set forth in Booker therefore applies to Mr. Cordo.  The remedial portion may be new (severing the statute), but the constitutional rule on which it relies -- which is what matters under Teague -- is not "new" for retroactivity purposes.

*2. Movant Invokes a Substantive, Not a Procedural Rule*

Even if the "rule" announced in Booker -- or even in Blakely -- were deemed to be "new" in that case, Teague would not govern.  The restrictions developed in Teague apply only to new *procedural* rules, not to new substantive rules.  Bousley v. United States, 523 U.S. 614, 619-20 (1998).  Under this structure, the Apprendi doctrine, as applied to guidelines sentencing, has procedural elements (notice in the charging instrument, decision by jury rather than judge), but its heart is substantive -- an elevation on constitutional grounds of the burden of proof.  See Schriro v. Summerlin, 542 U.S. --, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004), discussing Ring, and expressly reserving the question whether the beyond-a-reasonable-doubt requirement of Apprendi would be fully retroactive in federal habeas corpus proceedings.  124 S.Ct. at 2522 n.1.  Because the Third Circuit in Swinton ruled otherwise, 333 F.3d at 487-89,[10] Mr. Cordo does not pursue this point further here.  His position, however, is that because any

---

[10] See also Shade, supra note 7, at 3-5.

change wrought by <u>Blakely</u> and <u>Booker</u> is substantive under <u>Teague</u> analysis, it applies retroactively.

### 3. The <u>Apprendi/Ring</u> Rule Marks a "Watershed"

In <u>Swinton</u>, 333 F.3d at 490, the Third Circuit held that <u>Apprendi</u>'s holding about the burden and standard of proof at sentencing did not constitute a "watershed" change in the law. After <u>Blakely</u> and <u>Booker</u>, it is apparent that the <u>Swinton</u> Court did not appreciate <u>Apprendi</u>'s full impact. <u>Blakely</u> (and then <u>Booker</u>) showed that the Court "means what it said" in <u>Apprendi</u>. 124 S.Ct. at 2550 (Breyer, J., dissenting), and that its implications were far-reaching. <u>Blakely</u> fatally undermines the Third Circuit's <u>Swinton</u> decision against calling <u>Apprendi</u>'s burden of proof holding a "watershed change" in the fundamental law of fair procedure.

### 4. The Due Process Clause Requires Retroactive Enforcement

Federal due process law should also compel the conclusion that <u>Blakely</u> must apply retroactively in this case. The Supreme Court requires that new constructions of the elements of offenses must apply retroactively. <u>Fiore v. White</u>, 531 U.S. 225 (2001). As the Third Circuit has acknowledged, after <u>Apprendi</u>, aggravating sentencing factors are now akin to pre-existing elements. <u>United States v. Barbosa</u>, 271 F.3d 438, 456-57 (3d Cir. 2001).

The transformation of the guidelines into an advisory system works a substantive alteration in federal sentencing law with respect to sentences outside the guidelines. Non-guideline sentences no longer require satisfaction of the standards set forth in USSG § 5K2.0 (p.s.) or otherwise in the Guidelines Manual. Instead, judges may rely on a wider range of grounds to sentence outside the guidelines, whenever necessary to satisfy the substantive standards of § 3553(a). In the end, this analysis will call for rejection of the suggested guideline sentence in many cases.

The <u>Booker</u> decision also is substantive because it does not just affect sentencing procedure, but the actual sentence that can be imposed. If the result had been reversed, <u>i.e.</u>, if the guidelines had been transformed from an advisory system to a mandatory one, such a change clearly would be substantive and retroactive application would be precluded by the <u>Ex Post Facto</u> Clause to the extent that it disadvantaged the defendant. See <u>Lindsey v. Washington</u>, 301 U.S. 397 (1937); <u>United States v. Yeaman</u>, 248 F.3d 223, 227-28 (3d Cir. 2001) (later guideline which limited discretion to impose a lesser sentence is substantive change; could not be imposed retroactively).

For all of these reasons, the rule announced in <u>Apprendi</u> and clarified in <u>Ring</u>, as applied to federal sentencing under the Guidelines in <u>Booker</u>, is applicable to this case brought under 28 U.S.C. § 2255.

## CONCLUSION

This Court should grant the motion to vacate sentence filed by Joseph Cordo and promptly set the case for resentencing.

                                        Respectfully submitted,

Dated: February 9, 2005                *s/Peter Goldberger*
                                        PETER GOLDBERGER (PA 22364)
                                        50 Rittenhouse Place
                                        Ardmore, PA  19003-2276

                                        (610) 649-8200
                                        fax: (610) 649-8362
                                        e-mail: peter.goldberger@verizon.net

                                        <u>Attorney for Defendant Cordo</u>

CERTIFICATE OF SERVICE

On February 9, 2005, I served a copy of the foregoing document on the attorney for the government, by first class mail, addressed as follows:

Kim Douglas Daniel, Esq.
Assistant U.S. Attorney
P.O. Box 11754
Harrisburg, PA  17108-1754

___*s/Peter Goldberger*_____

-15-