IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | CRIM. NO. 1:CR-00-46-04 |
| Plaintiff : | |
| : | |
| v. : | FILED ELECTRONICALLY |
| : | |
| JOSEPH CORDO : | |
| : | |
| Defendant : | |

GOVERNMENT'S RESPONSE
TO DEFENDANT'S 28 U.S.C. § 2255 MOTION

I.   PROCEDURAL HISTORY

Joseph Cordo was indicted on February 16, 2000, on multiple counts of conspiracy, mail fraud, forfeiture, and money laundering offenses. The Indictment alleged Cordo and his coconspirators, Steven Stackpole and Jeffrey Klepper, defrauded a group of individual investors and several Pennsylvania funeral homes out of more than $7 million.

A two week jury trial in September of that year culminated in all of the defendants' convictions. Cordo was convicted on 15 counts, including conspiracy to commit mail fraud, conspiracy to commit money laundering, and 13 counts of

money laundering.[1]  On May 18, 2001, Cordo was sentenced to 96 months incarceration and ordered to pay $1,217,699 restitution to 27 individual investors.

On appeal, the Third Circuit affirmed Cordo's convictions but remanded the case to correct a "grouping error." *United States v. Cordo*, 324 F.3d 223 (3d Cir. 2003).[2]  On July 10, 2003, Cordo was resentenced to 78 months incarceration with all other aspects of his original sentence remaining the same.  Cordo did not appeal his new sentence, which was entered July 16, 2003.

Because the Third Circuit did not stay its mandate, the resentencing took place during the pendency of Cordo's petition for a writ of certiorari.[3]  The Supreme Court eventually denied Cordo's petition on November 17, 2003, and his conviction became final as of that date. *United States v. Cordo*, 124 S.Ct 588 (No. 03-584).

## II.  CORDO'S § 2555 PETITION

Cordo filed the instant 28 U.S.C. § 2255 petition to vacate his sentence on November 17, 2004, exactly one year after his conviction became final.  In his

---

[1] After the jury's return of their verdicts, Cordo also pleaded guilty conditionally to a forfeiture count.

[2] The Third Circuit determined Cordo's money laundering and mail fraud convictions had been improperly severed in calculating his guideline range.

[3] Cordo pursued a mail fraud issue in his petition for certiorari.

petition Cordo asserted two, alternative grounds for relief.

In the first, Cordo alleged he was sentenced in violation of his rights under the Grand Jury and Due Process Clauses of the Fifth Amendment, and the Jury Trial Clauses of the Sixth Amendment and of Article II, § 2, cl. 3, of the Constitution of the United Sates. Alternatively, Cordo alleged the Sentencing Reform Act and its implementing guidelines violated the Grand Jury and Due Process Clauses of the Fifth Amendment, and the Jury Trial Clauses of the Sixth Amendment and of Article II, § 2, cl. 3, of the Constitution.

Although Cordo did not specifically cite *Blakely v. Washington*, 542 U.S. __, 124 S.Ct. 2531 (2004), his petition was clearly based upon the Supreme Court's ruling in that case. In *Blakely,* which was decided just four months prior to Cordo §2255 petition, the Court invalidated a Washington State sentencing guideline system that enhanced a perpetrator's sentence based upon judicially found facts by a preponderance of the evidence. The Court held the statutory maximum for Sixth Amendment, right to jury trial purposes was the maximum sentence a judge could impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 124 S.Ct. at 2537

At the time Cordo filed his §2255 petition, Cordo sought and obtained a stay of the proceedings pending the Supreme Court's resolution of *United States v.*

*Booker.* On January 12, 2005, the Court announced its decision in *Booker*, extending its holding in *Blakely* to the U.S. Sentencing Guidelines. *United States v. Booker*, 543 U.S. __ , 125 S.Ct. 738 (Jan. 12, 2005).

On January 20, 2005, this Court directed Cordo to file a memorandum of law in support of his §2255 petition. Cordo filed his memorandum on February 9, 2005; the government's Response follows.

### III. UNDER THE *TEAGUE* DOCTRINE, NEITHER *BLAKELY* NOR *BOOKE*R ARE APPLICABLE TO CORDO'S §2255 PETITION

More than fourteen ago the Supreme Court ruled in *Teague v. Lane,* 489 U.S. 288 (1989), that new, judge-made rules of constitutional criminal procedure are not applicable to cases that became final before the new rule was announced, unless the new rule decriminalizes the charged conduct or prohibits the imposition of certain types of punishment for a class of defendants, or constitutes a "watershed rule of criminal procedure." *Lane,* at 310-12; *United Sates v. Swinton*, 333 F.3d 481,487 (3d Cir. 2003). Known as the *Teague* Doctrine, the doctrine presents a formidable obstacle to habeas corpus petitioners who seek to invalidate their sentences on collateral review.

Relying upon the Supreme Court's directive in *Teague* and other supporting caselaw, this Court has held on two prior occasions that *Blakely* is not applicable

to cases on collateral review. *United States v. Shade,* No. 1:CR-02-144-02, slip op. at 5 (M.D. Pa. Sept. 7, 2004 (Caldwell, J.)*; United States v. Stackpole*, 1: CR-00-46-01, slip op. at 9 (M.D. of Pa. Jan. 19, 2005)(Caldwell, J.). Recently, in a §2255 challenge brought by one of Cordo's former codefendants, this Court extended its *Teague* Doctrine analysis to *Booker,* concluding that like *Blakely*, it was not applicable to cases on collateral review.

> The Third Circuit has held that *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348, 147 L.Ed. 2d 435 (2000)*,* is not retroactive to cases on collateral review. *United States v. Swinton,* 333 F.3d 481, 491 (3d Cir. 2003). We have previously determined that *Blakely*, as a result of the Third Circuit's decision in *Swinton*, does not apply on collateral review. *See United States v. Shade,* No. 1:CR-02-144-02, slip op. at 5 (M.D. Pa. Sept. 7, 2004 (Caldwell, J.); see also *United States v. Stoltz*, 325 F. Supp. 2d 982, 987 (D. Minn. 2004). We do not find that the Court's recent decision in *United States v. Booker*, ___ U.S. ___, 2005 WL 50108 (2005), alters this analysis.

*Stackpole*, slip. op. at 9.

More recently, the Seventh Circuit became the first court of appeals to address the issue. In *McReynolds v. United States*, 2005 WL 237642 (Feb 2, 2005), the Circuit affirmed that "*Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005." *McReynolds*, at *2. The *McReynolds* Court noted that although the Supreme Court did not specifically address the issue in *Booker*, its decision in *Schiro v. Summerlin*, 124 S.Ct. 2519 (2004), "is all but conclusive on the point." *Id.* In *Schiro* the Supreme

Court held that *Ring v. Arizona*, 536 U.S. 584 (2002), was not retroactive to cases on collateral review.

Although the Third Circuit has not yet addressed the issue, the overwhelming weight of prior precedent and existing caselaw dictates that neither *Blakely* nor *Booker* are applicable to Cordo's §2255 petition. Indeed, Cordo cites no direct authority to the contrary. Thus, the Court should deny Cordo's §2255 petition on the basis of an alleged *Blakely* or *Booker* violation.

## IV. THE "NEW RULE" RELIED UPON BY CORDO WAS NOT ANNOUNCED IN *APPRENDI v. NEW JERSEY* OR *RING v. ARIZONA*

Cordo's memorandum of law in support of his §2225 petition can perhaps be best described as a clever attempt to circumvent the *Teague* Doctrine. In his brief Cordo argues his §2255 petition does not invoke the new rules announced in *Booker* or *Blakely*. Instead, Cordo claims his petition is premised upon two earlier Supreme Court decisions, *Apprendi v. New Jersey*, 530 U.S. 446, 120 S.Ct. 2348 (2000), and *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428 (2002). In *Apprendi* the Court held that any fact that increased the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, had to be proven to a jury beyond a reasonable doubt. *Apprendi*, 120 S.Ct. at 2366. In *Ring* the Court held that a sentencing judge, sitting without a jury, could not find an

aggravating circumstance necessary for imposition of the death penalty.  *Ring,* 122 S. Ct. at 2343.  Of course, both *Apprendi* and *Ring* were decided while Cordo's convictions were still on direct review.  Thus, the Teague Doctrine would not bar their application to his §2255 petition.

While creative, Cordo's argument is without merit.  Just last week Cordo's novel contention was soundly rejected by the District of Utah.  In a well-reasoned opinion, the Honorable Paul G. Cassell concluded that a §2255 petition identical to Cordo's was, in fact, based upon the new rules of procedure announced in *Blakely* and *Booker,* not *Apprendi* or *Ring,* and that neither *Booker* nor *Blakeley* applied retroactively to habeas proceedings.

Judge Cassell noted a rule is new "when it breaks new ground or imposes a new obligation on the federal government. ... a rule is not new where precedents inform, or even control or govern but do not compel its creation." *Johnson v. McKune*, 288 F.3d 1187,1196 (10th Cir. 2002), *cert denied*, 123 S.Ct. 621 (2002).  Although it is true the Supreme Court stated in *Booker* that *Apprendi* applied to the federal guidelines, the fact a court says its decision is within the logical compass of an earlier decision, or is indeed controlled by a prior decision, it is not conclusive for purposes of deciding whether the current decision is a new rule. *Butler v. McKeller*, 494 U.S. 407, 415, 110 S. Ct. 212 (1990).  The relevant

inquiry is whether the case law, as it existed at the time of sentencing, should have compelled the sentencing court to find a Guideline sentence violated the Sixth Amendment right to jury trial. Judge Cassell concluded no such compelling precedent existed at that time. While it could be said *Apprendi* and *Ring* foreshadowed the Court's decisions in *Blakely* and *Booker*, foreshadowing was not enough. Instead, *Blakely* (and then its progeny, *Booker*) dramatically changed our understanding as to what the Sixth Amendment meant.[4]

Judge Cassell also had no trouble determining that the new rule announced in *Blakely/Booker* was procedural as opposed to substantive, and was not a "watershed rule" of criminal procedure. *Rucker*, at *8-*9. In making this determination, Judge Cassell relied upon the Seventh Circuit's holding in *McReynolds v. United States*, 2005 WL 237642 (7th Cir. Feb. 2, 2005). *Booker* (like *Blakely*) is concerned about the allocation of the decision making authority - a "prototypical procedural rule." *Rucker*, at *6, citing *Schriro v. Summerlin*, 124 S. Ct. 2519, 2523.

---

[4] In her dissent, Justice O'Connor warned "there is no map of the uncharted territory blazed by today's *unprecedented* holding." *Blakely*, 124 S.Ct. at 2547, n.1 (emphasis supplied). Confirming that *Blakely* radically changed federal sentencing procedures is the fact that prior to *Blakely*, every Circuit that considered whether the Sixth Amendment required jury determinations in applying the Guidelines had rejected this claim. *See, e.g. United States v. DeSumma,* 272 F.3d 176 (3d Cir. 2001).

Judge Cassell left unanswered the question as to whether the new rule was actually announced by *Blakely* or by *Booker*, inasmuch as *Rucker*'s conviction was final before either case was decided.  However, the 7th Circuit determined the new rule was actually announced in *Booker*, rather than *Blakely*.

> We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005.  That date, rather than June 24, 2004, on which *Blakely v. Washington* ... came down, is the appropriate dividing line.  *Blakely* reserved decision about the status of the federal sentencing guidelines ... so *Booker* itself represents the establishment of a new rule about the federal system.  Petitioners' convictions and sentences became final well before *Booker* was issued, and its approach therefore does not govern these collateral proceedings.

*McReynolds*, at *2 (citations omitted).

### V.   CONCLUSION

Based on all of the above, it is clear that neither *Blakely* nor *Booker* retroactively apply to Cordo's §2255 petition. Thus, no habeas corpus relief can be granted Cordo on this basis. Accordingly, the government respectfully requests the Court deny Cordo's § 2255 petition.

          Respectfully submitted,

          THOMAS A. MARINO
          UNITED STATES ATTORNEY


          /s/ Kim Douglas Daniel
          KIM DOUGLAS DANIEL
          Assistant U.S. Attorney
          P.O. Box 11754
          Harrisburg, Pennsylvania 17108
          P.A. 31038
          (717) 221-4482
          (717) 221-4493
          kim.daniel@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | CRIM. NO. 1:CR-00-46-04 |
| Plaintiff : | |
| : | |
| v. : | FILED ELECTRONICALLY |
| : | |
| JOSEPH CORDO : | |
| : | |
| Defendant : | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion to be competent to serve papers.

That this 18th day of February 2005, she served a copy of the attached

**GOVERNMENT'S RESPONSE
TO DEFENDANT'S 28 U.S.C. § 2255 MOTION**

by electronic means by sending a copy to each of the e-mail addresses stated below:

Addressee:

Peter Goldberger
Law Office of Peter Goldberger
50 Rittenhouse Place
Ardmore, PA 19003
610-649-8200
Email: Peter.Goldberger@verizon.net

/s/ AMANDA L. LAU
Amanda L. Lau
Legal Assistant